**In re the Marriage of Jerrilyn Sue DAMMANN, petitioner, Respondent,**

v.

**Leo Frederick DAMMANN, Appellant.**

**No. C0–83–1986.**

Court of Appeals of Minnesota.

June 26, 1984.

James C. Nordstrom, Lake City, for respondent.

Peder B. Hong, Red Wing, for appellant.

Heard, considered, and decided by WOZNIAK, P.J., and HUSPENI and NIERENGARTEN, JJ.

### OPINION

WOZNIAK, Judge.

This appeal arises from a dissolution proceeding. Leo Dammann challenges the trial court's apportionment of his nonmarital property and division of the personal property. We affirm in part; reverse and remand in part.

## FACTS

The parties married on February 7, 1975, and the marriage lasted eight years. No children were born to the Dammanns. At the time of the dissolution, Leo was 46 and Jerrilyn 35. Both had been previously married. Leo's former wife had died; Jerrilyn's prior marriage had ended in divorce.

Both of the Dammanns work at Imperial Clevite, Inc. of Lake City. Jerrilyn has been there for 15 years and is now employed as a customer service manager, and earns $16,900 per year. Leo earns approximately $15,000 to $16,000.

In August of 1978, the parties purchased a home in Lake City for $52,500. As a downpayment, Leo paid $34,709 in cash which was part of insurance proceeds received from the death of his first wife. The remaining $17,791 was borrowed from the Lake City Federal Savings and Loan and secured by a mortgage.

Early in the marriage, Leo experienced difficulties making payments on the house, utilities, and his truck. The parties agreed to deposit social security checks paid to Leo into Jerrilyn's checking account and that she would make the house, utility, and truck payments. Leo paid for much of the parties' food and entertainment. Leo also inherited $10,000, of which about $2,000 remains in an account; the rest was presumably used for household expenses. The trial court found that the parties shared household expenses on a 50/50 basis.

The trial court ordered the house sold. After deducting the estimated $3,600 for realtor's fees and $1,000 for repairs as costs of selling the house, the existing mortgage of $16,222, and the increase in Leo's nonmarital interest in the house, the court determined that the house's net value was nonmarital. The trial court nonetheless concluded that an inequity would be done if this nonmarital asset was not apportioned between the parties. The court decreed one-third of the net proceeds from the sale to Jerrilyn and the remaining two-thirds to Leo.

During the marriage, the parties bought a $2400 oak bedroom set, a color television, a microwave oven, and utensils. Before the marriage, Leo bought an engagement and a wedding ring which he gave to Jerrilyn as a gift.

## ISSUE

Did the trial court abuse its discretion by invading the nonmarital assets of the husband?

## ANALYSIS

■ The standard of review for property settlements is very narrow. The trial court has broad discretion and will be reversed only for a clear abuse of discretion. *Bogen v. Bogen*, 261 N.W.2d 606 (Minn. 1977). Not distributing the property according to the statute is an abuse of discretion.

■ Courts have no power to distribute property but by statute. *Filkins v. Filkins*, 347 N.W.2d 526 at 528 (Minn.Ct. App.1984). Nonmarital property normally is not distributed by the court unless:

> the court finds that either spouse's resources or property, including his portion of the marital property as defined in section 518.54 subdivision 5 are so inadequate as to work an *unfair hardship*, considering all relevant circumstances, the court may, in addition to the marital property, apportion up to one-half of the property otherwise excluded under section 518.54, subdivision 5, clauses (a) to (d) to prevent the unfair hardship. If the court apportions property other than marital property, it *shall make findings* in support of the apportionment.

(Emphasis added) Minn.Stat. § 518.58 (1982). Nonmarital property is defined as:

> property real or personal, acquired by either spouse before, during, or after the existence of their marriage, which
>
> . . . .
>
> (b) is acquired before the marriage;
> (c) is acquired in exchange for or is the increase in value of property which is described in clauses (a), (b), (d), and (e);

Minn.Stat. § 518.54(5) (1982). It is an unusual case where nonmarital property is distributed. *Wilson v. Wilson,* 348 N.W.2d 357 (Minn.Ct.App.1984); *Van de Loo v. Van de Loo,* 346 N.W.2d 173 (Minn.Ct.App. 1984).

■ The trial court determined that the proceeds from the sale of the home were nonmarital property. The insurance proceeds used for purchasing the parties' house were procured prior to the marriage and, therefore, were nonmarital assets. The increased value because of the rise in property value is also nonmarital property. Minn.Stat. § 518.54(5)(c) (1982).

From a Kentucky court of appeals case, *Woosnam v. Woosnam,* 587 S.W.2d 262 (Ky.Ct.App.1979), the Minnesota Supreme Court adopted a formula for determining what share of the increased value is attributable to the investment of nonmarital property:

The present value of a nonmarital asset used in the acquisition of marital property is the proportion the net equity or contribution at the time of acquisition bore to the value of the property at the time of purchase multiplied by the value of the property at the time of separation. The remainder of equity increase is characterized as marital property and is distributed according to Minn.Stat. § 518.-58.

*Brown v. Brown,* 316 N.W.2d 552, 553 (Minn.1982); *see Faus v. Faus,* 319 N.W.2d 408, 412 (Minn.1982); *Schmitz v. Schmitz,* 309 N.W.2d 748, 750 (Minn.1981).

The trial court substantially followed the formula in determining that no marital assets were left in the net proceeds from the sale of the house. Given the substantial compliance with the *Woosnam* formula, this court is reluctant to recompute the mathematics of the trial court's decision. *See id.*

By awarding one-third of the assets from the sale of the home to Jerrilyn, the court distributed nonmarital assets. The trial court found an unfair hardship because Jerrilyn made "substantial contributions to the homestead by paying house payments, taxes, utilities, and insurance .... [Jerrilyn] also made substantial contributions not related to the homestead ... including payments on the truck which has been awarded to [Leo]."

Under the statute, a finding of unfair hardship must be made based on:

all relevant factors including the length of the marriage, any prior marriage of a party, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, needs, and opportunity for future acquisition of capital assets and income of each party.

Minn.Stat. § 518.58 (1982). The trial court did not make specific findings based upon the factors set forth in the statute. *Faus,* 319 N.W.2d at 412. The court based its finding of unfair hardship not on any of the statutory factors, but upon Jerrilyn's having made "substantial contributions to the mortgage, utility, and car payments." Such a hardship is not supported by the court's findings of fact or the record. Although the trial court noted that Jerrilyn had made substantial contributions, it found that the parties had shared expenses half and half. If expenses were evenly split, Jerrilyn's contributions could not have been so excessive as to create an unfair hardship.

The record shows at least $200 to $300 per month of the payments were out of social security checks to Leo which were deposited in Jerrilyn's account. Leo also contributed $8,000 of nonmarital assets out of his inheritance.

The trial court made no specific findings on what constituted Jerrilyn's "substantial contributions." It made only the conclusory judgment that "substantial contributions" had been made. This conclusion is supported neither by the court's own findings of fact nor the record. Looking at all relevant factors, Jerrilyn is in at least as good a position, and perhaps even in a better position than Leo. The marriage only lasted eight years. Both had previously been married. She is ten years

younger than he is. She earns more money than he does. Both are healthy. There are no substantial liabilities owed by either party. The trial court abused its discretion in awarding one-third of the net proceeds from the sale of the house to Jerrilyn.

## DECISION

The trial court erred by invading the husband's nonmarital assets. We remand to the trial court to amend the dissolution decree to award Appellant, Leo Frederick Dammann, the homestead of the parties, free and clear of any claims by Respondent, Jerrilyn Sue Dammann. The trial court properly distributed the parties' personal property.

Affirmed in part; reversed and remanded in part.