In re the Marriage of Cedric QUICK, Petitioner, Appellant,

v.

Dorothy QUICK, Respondent.

No. CX–85–1126.

Court of Appeals of Minnesota.

Jan. 28, 1986.

Cedric Quick, pro se.

Stephen C. Davis, Michal J. Minenko, Katz, Lange, Davis & Manka, Minneapolis, for respondent.

Heard, considered and decided by LANSING, P.J., and HUSPENI and LESLIE, JJ.

## OPINION

LANSING, Judge.

In this dissolution action Cedric Quick appeals the trial court's distribution of marital property, determination of spousal maintenance and child support, and award of attorney's fees. We affirm.

## FACTS

Cedric Quick and Dorothy Quick were married in 1962 in Cardiff, Wales. They came to the United States in 1968 when Dr. Quick, a physician specializing in otolaryngology, accepted a fellowship at the University of Minnesota. Until 1977 he taught at the university and practiced privately at his own clinic, the Minnesota Otorhinolaryngology Clinic, P.A.

Throughout most of the marriage Cedric Quick was the primary wage earner and Dorothy Quick worked as a homemaker, raising their three children. When they lived in Great Britain, Dorothy Quick was trained in radiography, a field similar to x-ray technology here. She is no longer licensed to work in that field and experiences the effects of radiation exposure, including a vulnerability to infections and a low white blood cell count.

The parties separated in 1977 when Cedric Quick left the state to work elsewhere. He now practices in Petersburg, Virginia. In September 1983 the trial court issued a temporary order requiring him to pay $1,000 per month in child support and $500 per month in spousal maintenance. The order restrained both parties from transferring or disposing of property except in the usual course of business or for the necessities of life and made each party accountable to the court for all such transfers and dispositions.

In September 1976 Dr. Quick individually had purchased a 1935 Rolls Royce automobile for 3,000 pounds sterling; in 1980 it was transferred to his clinic's pension and profit-sharing plan to repay a $10,000 loan. In May 1978 the pension and profit-sharing plan purchased a 1926 Bentley automobile for 24,500 pounds sterling, which at that time was the equivalent of $42,000 to $43,000. In August 1984, Dr. Quick sold the Rolls Royce for $10,500 and the Bentley for $24,500 to his close friend and employee, Kathy Norton. At the same time he closed out the pension and profit-sharing account.

The trial took place November 26–30, 1984. The trial court valued and divided the marital assets as follows:

| Cedric Quick | | Dorothy Quick | |
|---|---|---|---|
| Virginia homestead | $ 13,000.00 | Minn. homestead | $ 92,000.00 |
| Personal property in | | Personal property | 12,945.50 |
| Minn. home | 7,011.00 | Mahtomedi mortgage | 74,847.18 |
| Personal propery in Virginia | 3,466.00 | Smart Plan | 82.00 |
| Antique Bentley and Rolls | | | |
| Royce | 90,000.00 | | |
| Virginia Head and Neck | | | |
| Specialties | 108,417.00 | | |
| Minnesota Otorhinolaryn- | | | |
| gology Pension & Profit | | | |
| Accounts | 2,606.17 | | |
| | $224,500.17 | | $179,874.68 |
| Minus Property settlement | | Plus property settlement | |
| to respondent | (22,312.75) | | 22,312.75 |
| | $202,187.42 | | $202,187.43 |

Because Dr. Quick had spent the funds from the sale of the classic cars and the pension and profit-sharing accounts, the trial court credited him with advance property distributions of $90,000 and $2,606.17.

The trial court awarded Dorothy Quick spousal maintenance in the amount of $350 per month for a period of four years. The court set child support at $1,402.80 per month for the two children in Dorothy Quick's custody. The trial court found that Dr. Quick's failure to pay $6,750 in child support and maintenance was willful and refused to forgive the arrearages. Dorothy Quick was awarded $5,000 in attorney's fees.

## ISSUES

1. Did the trial court abuse its discretion in distributing the marital property?

2. Did the trial court abuse its discretion in awarding rehabilitative spousal maintenance?

3. Did the trial court abuse its discretion in determining appellant's child support obligation?

4. Did the trial court abuse its discretion in refusing to forgive child support and maintenance arrearages?

5. Did the trial court abuse its discretion in awarding attorney's fees to respondent?

## ANALYSIS

### I

### Equitable Distribution

The trial court divided the marital estate equally. Because Dorothy Quick contributed no income during the early years of the marriage when Dr. Quick was developing his career, he argues the court abused its discretion in dividing the property equally.

Minn.Stat. § 518.58 (1984), which requires the trial court to make a just and equitable division of marital property, provides:

The court shall also consider the contribution of each in the acquisition, preservation, depreciation or appreciation in the amount or value of the marital property, as well as the contribution of a spouse as a homemaker. It shall be conclusively presumed that each spouse made a substantial contribution to the acquisition of income and property while they were living together as husband and wife.

Thus, Dorothy Quick's contributions as a homemaker must be valued with Dr. Quick's monetary contributions in distributing the marital assets equitably. *See Ferguson v. Ferguson*, 357 N.W.2d 104 (Minn. Ct.App.1984). An equal division of the wealth accumulated through the joint efforts of two parties is appropriate when a

long-term marriage is dissolved. *Miller v. Miller*, 352 N.W.2d 738, 742 (Minn.1984). The trial court did not abuse its discretion in equally dividing the marital property.

Dr. Quick also argues that some of his non-marital property was included in the marital estate. This claim was not raised at trial. An appellate court will not consider issues that were not raised in the trial court. *Benedict v. Benedict*, 361 N.W.2d 429, 431 (Minn.Ct.App.1985).

**Valuation**

■ Dr. Quick's business, Virginia Head and Neck Specialties, was included in the marital estate. The trial court valued it at $108,417 and awarded it to Dr. Quick. He contends that the business in fact has a much lower value. We must affirm the trial court's valuation of marital property if it is within the range of credible estimates made by competent witnesses. *Balogh v. Balogh*, 376 N.W.2d 752 (Minn.Ct.App. 1985), *pet. for review denied*, (Minn. December 27, 1985). A trial court's determination of an asset's value will be overturned only if clearly erroneous. *Lammi v. Lammi*, 348 N.W.2d 372 (Minn.Ct.App. 1984).

At trial three experts testified as to the value of the business. Their estimates were basically book value plus accounts receivable discounted 30% ($86,187); liquidated value (0); and book value plus accounts receivable discounted 22% ($108,-417). The trial court accepted the highest value, which was based on credible evidence. This finding is not clearly erroneous.

Also included in the property distribution were the two classic cars, which the trial court valued at $90,000. Dr. Quick disputes this valuation. At the time of trial he claimed they were worth $33,500. An experienced antique and classic car appraiser testified that based upon a physical inspection of the cars in 1979 or 1980, the cars were worth $90,000. In a personal financial statement prepared by Dr. Quick to obtain a bank loan in July 1982, he valued the automobiles at $110,000. Dr. Quick claimed the condition of the vehicles had deteriorated since then, but because he sold them they were not available for a current appraisal. The trial court's valuation of the automobiles falls within the limits of credible estimates made by competent witnesses and is not clearly erroneous.

■ When a party in a dissolution proceeding liquidates and spends a marital asset, the trial court may count its full value in dividing the property. *See Swanstrom v. Swanstrom*, 359 N.W.2d 634, 638 (Minn. Ct.App.1984). The trial court acted within its discretion when it credited Dr. Quick with an advance property distribution of $90,000 from the sale of the classic cars.

## II

The trial court ordered Dr. Quick to pay $350 per month in spousal maintenance for four years. Dr. Quick argues this was an abuse of discretion.

Dorothy Quick did not work outside the home for most of the 22-year marriage. In 1982 she obtained a job with the U.S. Chamber of Commerce, and her net biweekly income is $365.30. In 1984 she began supplementing her income with telemarketing work in the evenings. She was 45 years old when the judgment and decree was entered.

■ The trial court found that Dorothy Quick will have $3,079 available to her each month from employment, marital property, and child support. Her monthly living expenses are estimated at $3,651. The trial court thoroughly and carefully considered the factors enumerated in Minn.Stat. § 518.552, subd. 2 (1984), to determine the appropriate level of support. The court's conclusion that Dorothy Quick is entitled to $350 per month for four years "to provide for her needs during the period of transition and advancement in her employment" was within the court's sound discretion.

## III

■ The trial court ordered Dr. Quick to pay $1,402 per month in child support. This figure is based on a gross annual

income of $90,000, which the trial court determined to be the amount Dr. Quick has the ability to earn from his medical practice. The court found that his gross income was $154,000 in fiscal year ending August 31, 1982; $105,500 for the year ending August 31, 1983; and $55,000 in fiscal year ending August 31, 1984. However, the record shows that he voluntarily spent about $50,000 expanding his medical practice in 1984, and had he not incurred these additional expenses his salary for 1984 would have been comparable to that received in previous years.

Dr. Quick's 1984 earnings do not accurately reflect his income-earning potential. The trial court did not abuse its discretion in basing the child support award on past earnings and earning potential. *See, e.g., Ferguson v. Ferguson,* 357 N.W.2d 104, 108 (Minn.Ct.App.1984).

### IV

At the time of trial Dr. Quick had accumulated $6,750 in arrearages for child support and spousal maintenance. The trial court refused to forgive these arrearages based on a finding that Dr. Quick had the ability to pay but instead chose to decrease his salary in order to invest in furniture and larger offices for his practice. The court's decision not to forgive arrearages accords with Minn.Stat. § 518.64, subd. 2 (1984), and was not an abuse of discretion.

### V

Dorothy Quick's attorney's fees and costs amounted to $17,336. The trial court awarded her $5,000 in attorney's fees under the authority provided in Minn.Stat. § 518.14 (1984). An award of attorney's fees will not be disturbed on appeal absent a clear abuse of discretion. *Bogen v. Bogen,* 261 N.W.2d 606, 611 (Minn.1977). There was no abuse of discretion here.

### DECISION

The trial court did not abuse its discretion in distributing the marital property, setting child support and rehabilitative spousal maintenance, or awarding attorney's fees to respondent.

Affirmed.