**In re the Marriage of Gary Earl WOLTER, Petitioner, Appellant,**

v.

**Suzanne Carol WOLTER, Respondent.**

No. C4–86–418.

Court of Appeals of Minnesota.

Nov. 4, 1986.

See also, Minn.App., 367 N.W.2d 96.

Becky S. Toevs, Messerli & Kramer, Minneapolis, for appellant.

Jack S. Jaycox, Bloomington, for respondent.

Heard, considered and decided by NIERENGARTEN, P.J., and WOZNIAK and SEDGWICK, JJ.

## OPINION

SEDGWICK, Judge.

This marital dissolution proceeding was bifurcated. On October 12, 1984, the court dissolved the marriage and awarded the parties joint custody of their two minor children. That decision was affirmed by this court.

In this proceeding the court divided the parties' property and awarded child support to respondent. Gary Wolter appeals denial of his motion for a new trial. Respondent noticed review of the child support award. We affirm in part and reverse in part.

## FACTS

The parties were married on June 1, 1972. Appellant is a pilot with Northwest

Airlines and has a net monthly income in excess of $6,000. Respondent is a cabin attendant with the same airline, and earns a net monthly income of approximately $1,800. Both parties are ablebodied and employed fulltime.

The parties had substantial marital assets. The court awarded appellant marital property valued at $185,842, including the homestead. Respondent was awarded $163,317.66 in marital property. Approximately $39,000 of the marital property awarded to appellant constituted a "de facto distribution" of monies spent by him on legal and investigative expenses in connection with the dissolution.

During the marriage, appellant sold an apartment complex he had purchased an interest in prior to marriage. The court valued appellant's nonmarital interest in the proceeds, and awarded a portion of that interest to respondent.

Appellant's mother loaned him $25,000 prior to marriage so that he could invest the money for her. Appellant signed a promissory note after the marriage and made monthly payments on the note. The trial court held that any remaining obligation on the loan was appellant's alone and not a marital debt.

Finally, the court awarded child support to respondent in an amount below the statutory guideline.

Appellant cites as error the court's division of the apartment complex proceeds, its treatment of his expenditures on attorneys and investigative fees, and the characterization of the loan to his mother. Respondent seeks review of the court's determination of child support.

## ISSUES

1. Did the trial court err in its distribution of the proceeds of the sale of the apartment complex?

2. Did the trial court err in including in its award of marital property to appellant $39,325.30 previously spent by him in legal and investigative expenses?

3. Did the trial court err in apportioning to appellant the $25,000 obligation to his mother?

4. Did the trial court err in awarding respondent child support at half the statutory guideline amount?

## ANALYSIS

1. Distribution of Apartment Proceeds.

A trial court has broad discretion in dividing property in a dissolution proceeding and will be reversed only upon a clear showing of abuse of discretion. *Plaster v. Plaster,* 373 N.W.2d 604, 606 (Minn.Ct.App. 1985).

Appellant and his brother purchased an apartment complex in 1971, prior to the parties' marriage, for $172,500. The court determined appellant's pre-marital contribution to the acquisition of the apartments to be $33,873.22, consisting of appellant's $25,000 downpayment, his $273.22 payment on an underlying contract for deed, and $8,600 in time spent improving the apartments.

The court also found that during the marriage appellant purchased his brother's interests in the apartments for approximately $5,000 to $6,000 and that contribution was deemed to have been made with marital funds.

The apartments were sold in 1976, while the parties were still married, for $214,000. This amount consisted of a $40,000 cash downpayment, an $87,756.50 mortgage assumption, and an $86,243.50 contract for deed (Campbell contract).

The court determined that the value of the Campbell contract for purposes of property division was $38,354.41 on the date the marriage was dissolved. It arrived at that figure by subtracting appellant's remaining liability on the prior contract, and adding the payments appellant received under the Campbell contract during the parties' separation.

The court found that of the $40,000 downpayment, $16,000 had been disbursed for family expenses and was untraceable,

but that the remaining $24,000 was traceable to a Wright County State Bank certificate of deposit.

The court was faced with the problem of apportioning the proceeds of the sale of the apartments into its marital and nonmarital components.

The trial court resolved this issue as follows:

[Appellant] has a nonmarital interest in the proceeds of the * * * Apartments' sale in the amount of $42,022.43 traceable to the parties assets as follows:

| | |
|---|---|
| Campbell contract | $38,354.41 |
| Wright County State Bank | $ 3,668.02 |
| | $42,022.43 |

The court applied the formula in *Schmitz* to arrive at appellant's $42,022.43 nonmarital interest. *Schmitz v. Schmitz*, 309 N.W.2d 748 (Minn.1981).

Appellant is not arguing that the court valued his nonmarital share of the proceeds incorrectly under *Schmitz*, and we therefore do not reach that issue. Rather, he argues the court erred in not awarding him the amount found to be his nonmarital share, plus half of what he asserts is the remaining traceable net equity.

■ Even assuming appellant's method of computing the amount of the marital portion of the proceeds is correct, the trial court would not have to award him half that amount. No authority requires that a party must get exactly half the marital property in a specific asset or its proceeds. "The statute authorizing division of marital property requires a just and equitable division, but not an equal one." *Resch v. Resch*, 381 N.W.2d 460, 463 (Minn.Ct.App. 1986). Furthermore, appellant was awarded more than half of the parties' total marital property.

However, appellant has a stronger argument that it was error not to award him the amount the court determined was his nonmarital share in the proceeds.

■ After determining that appellant had a nonmarital interest of $42,022.43 in the proceeds of the apartments, the court awarded $11,262.22 of that property to respondent. It gave only the following basis for this award:

This distribution of a portion of [Appellant's] nonmarital property was made necessary by his dissipation of marital assets in payment of his legal expenses.

Nonmarital property may be divided only upon a finding of "unfair hardship" to a spouse. Minn.Stat. § 518.58 (1984); *Berry v. Breslain*, 352 N.W.2d 516, 518 (Minn.Ct. App.1984), *pet. for rev. denied* (Minn. Nov. 8, 1984). The finding must be based on the factors set forth in the statute. *Dammann v. Dammann*, 351 N.W.2d 651, 653 (Minn.Ct.App.1984). Not distributing the property according to the statute is an abuse of discretion. *Id.* at 652.

The statute provides:

If the court apportions property other than marital property, it shall make findings in support of the apportionment. The findings shall be based on all relevant factors including the length of the marriage, any prior marriage of a party, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, needs, and opportunity for future acquisition of capital assets and income of each party.

Minn.Stat. § 518.58.

The court's division of appellant's nonmarital property was not based on a finding of unfair hardship or a consideration of the statutory factors. The basis given, moreover, that appellant had dissipated marital funds in payment of legal expenses, was also used to justify a "de facto distribution" of over $39,000 in marital funds to respondent, so it appears that this factor was counted twice.

■ On the basis of this record, no finding of undue hardship could have been made, since respondent was awarded $160,-000 in marital property and has a net monthly income of approximately $1,800.

2. De Facto Distribution of $39,325.30.

The trial court included in its award of marital property to appellant $39,325.30

that had already been spent by him on legal fees, expenses and investigation costs.

The court found the funds were marital assets and they were spent on nonmarital expenses. The court's primary reason for accounting for these funds the way it did was that otherwise appellant would have his attorney's fees paid with marital funds while respondent would have to pay hers out of her award of marital property.

Appellant argues this was error for two reasons: (1) the funds were mostly income earned by him after separation (all but $12,000), and there is no authority to treat their expenditure as dissipation of marital funds, especially since appellant paid much of respondent's household expenses during their separation and her expenditures of earned income were not similarly treated; and (2) the court was awarding attorney's fees in disregard of the statutory criteria of Minn.Stat. § 518.14.

■ The court had authority to treat the expenditures as it did. Property acquired during the period between commencement of the dissolution proceeding and the final decree awarding dissolution is marital property. *Gummow v. Gummow,* 375 N.W.2d 30, 35 (Minn.Ct.App.1985). The trial court noted that it did not treat appellant's entire net income earned during that period as a marital asset, but included only those amounts spent on private investigators, attorney's fees and court costs.

In *Rohling v. Rohling,* 379 N.W.2d 519 (Minn.1986), the supreme court held that the trial court had discretion, in determining a party's share of the marital assets, to include money received by the party during the marriage under his retirement plan and spent entirely by him without his ex-wife's knowledge. The court reasoned:

> Although the * * * funds were dissipated at the time the district court divided the marital property, * * * [§ 518.54, subd. 5] necessarily defines marital property as that which was *acquired* during the marriage. Thus, the property need

not necessarily be "present" at the time of dissolution.

379 N.W.2d at 522 (emphasis in original).

In *Hortis v. Hortis,* 367 N.W.2d 633 (Minn.Ct.App.1985), the trial court, in valuing a savings account consisting of marital property, disregarded recent expenditures for legal expenses from the account by the party receiving the account. This court held:

> The general rule is that a party cannot be permitted to benefit by depletion of marital assets within his control. * * * [Appellant] conceded that the withdrawals were to pay for his legal fees and expenses which would be his own responsibility absent a court order. *See,* Minn. Stat. § 518.14 (1984). The court, therefore, was well within its discretion in disregarding these withdrawals.

367 N.W.2d at 636–37 (citation omitted); *see also Quick v. Quick,* 381 N.W.2d 5 (Minn.Ct.App.1986).

*Griepp v. Griepp,* 381 N.W.2d 865, 869 (Minn.Ct.App.1986), does not support appellant's argument. In *Griepp,* this court affirmed a trial court's finding that a party's use of tax refunds for living expenses did not constitute dissipation of marital assets. Here the trial court did not treat appellant's use of marital assets (i.e., his pre-dissolution income) for living expenses as a dissipation.

Although the court justified its decision in part by analogizing to a grant of attorney's fees, it really was not making a de facto grant of attorney's fees since the amount distributed bore no relation to respondent's attorney's fees. Instead, the court was dividing up marital property in a way it believed was just and equitable, and one of the factors it considered was that appellant's attorney's fees had been paid with marital funds while respondent's were still owing. It was within the trial court's discretion to take this into account when dividing marital assets.

3. Liability on Loan to Appellant's Mother.

■ Appellant borrowed $25,000 from his mother six months prior to marriage,

and signed a promissory note after marriage. The court found:

> [T]he obligation to repay this loan was established prior to the marriage. Furthermore, Respondent never signed this note. Any amount owing on this note is [Appellant's] sole liability and is not a marital debt.

Debts are apportionable between spouses as property in a dissolution proceeding. *Wehner v. Wehner,* 374 N.W.2d 569, 571 (Minn.Ct.App.1985). The trial court is guided by equitable considerations in distributing rights and liabilities and has broad discretion in the distribution. *Plaster v. Plaster,* 373 N.W.2d 604, 607 (Minn. Ct.App.1985). The court's division will be affirmed if it is supported by the evidence, even if this court would reach a different conclusion. *Hattstrom v. Hattstrom,* 385 N.W.2d 332, 337 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. June 30, 1986).

The court's decision to allocate the debt to appellant is equitable and within its discretion. *See Filkins v. Filkins,* 347 N.W.2d 526, 529 (Minn.Ct.App.1984) (debts awarded to party who has incurred them for his own purposes); *Yackel v. Yackel,* 366 N.W.2d 382, 385 (Minn.Ct.App.1985) (not abuse of discretion to award debt based on relative ability to pay and uncertainty of party's obligation to his parents).

### 4. Child Support.

■ Respondent challenges the trial court's award of child support to her at 50% below the statutory guideline amount. Minn.Stat. § 518.551, subd. 5 (1984). Child support determinations are within the discretion of the trial court and will not be reversed absent a "clear showing of an abuse of discretion." *Reck v. Reck,* 346 N.W.2d 675, 677 (Minn.Ct.App.1984).

Minn.Stat. § 518.17, subd. 4 (1984), sets forth the factors to be considered when determining child support.

In *Moylan v. Moylan,* 384 N.W.2d 859 (Minn.1986), the supreme court held that in nonpublic assistance child support cases, courts should use the statutory guidelines as "starting points" in determining child support awards. 384 N.W.2d at 863; *see also Linderman v. Linderman,* 364 N.W.2d 872, 875 (Minn.Ct.App.1985) ("the statutory guidelines are not to be applied mechanically"). It further held that a court must make specific findings taking into account the factors in § 518.17, subd. 4, and balance these factors to determine the appropriate amount of child support. *Moylan,* 384 N.W.2d at 863–64. Such findings will not be set aside unless clearly erroneous. Minn.R.Civ.P. 52.01; *Linderman,* 364 N.W.2d at 875.

The parties here were previously awarded joint custody of their two daughters, ages 10 and 12. Each party has physical custody for six months each year. The court determined that under the statutory guidelines the appellant's obligation would be $1,800 per month for six months, while respondent's would be $540 per month for six months, so that appellant's presumptive obligation would be $1,260 per month for six months. This result comports with the method of computation approved in *Valento v. Valento,* 385 N.W.2d 860 (Minn.Ct. App.1986), *pet. for rev. denied* (Minn. June 30, 1986).

In deciding to reduce this award by one-half, the court made the following findings:

> [T]he children have no financial resources of their own. Yet, there is no evidence that they have physical, emotional or educational needs which impose financial burdens beyond those common for children of their ages. [Appellant] earns substantially more than Respondent while their needs are comparable. Nevertheless, Respondent has an above average income and has physical custody of the children for only six months. These factors necessarily reduce her financial need. Under all of the foregoing circumstances, it is found that reducing [Appellant's] presumptive support obligation by 50% will not downgrade the children's standard of living while in Respondent's custody. Therefore, [Appellant's] support obligation for the parties' two children shall be $630.00 for six months.

The court expanded on its determination in a post-trial memorandum, as follows:

[T]he Court determined that a downward deviation by 50% was warranted in light of respondent's financial resources and the lack of any extraordinary needs of the children. In refusing to deviate further, the Court was motivated by one primary concern. There was evidence that [appellant's] yearly gross income is approximately $122,000.00, as contrasted with respondent's approximate income of $36,000.00 per year. Common sense tells one that the children, while in [appellant's] home, could be offered advantages and luxuries not available in respondent's home. This disparity might eventually manipulate the feelings of the children towards their respective parents.

It was the potential unwholesome effect of this income disparity which moved the Court to award child support. The court was not overly concerned with respondent's living expenses. Again, common sense indicates thatshe can support herself and two children on her salary. Nevertheless, without some support, she cannot provide them with the material advantages they will undoubtably become accustomed to in [appellant's] home. In view of this, and [appellant's] high income, the Court does not feel that $630.00 per month for six months, an average of only $315.00 per month over the entire year, is an unreasonable amount of support for [appellant] to pay.

Respondent's main argument is that the court abused its discretion because appellant earns three times as much as she and her child care expenses will be higher than his because she has custody during the summer.

A trial court has broad discretion in awarding child support. *Linderman,* 364 N.W.2d at 875. The court considered the statutory factors as required by *Moylan* in making its decision, including the resources and needs of the parents and children. The court did not abuse its discretion in deviat-ing downward by 50% in making its award of $630 per month.

## DECISION

We affirm the trial court's apportionment of debt and award of child support. We remand with instructions to correct the judgment in favor of appellant to award him $11,262.22 in his nonmarital assets previously awarded to respondent. The court may also reconsider whether it is necessary to award respondent a similar sum from the marital portion of the proceeds of this property awarded to appellant to preserve the equity of the court's original distribution. Affirmed in part, reversed in part and remanded.