*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A22-1685**

In re the Marriage of:

Rachel Marie Benedict, petitioner,
Respondent,

vs.

Thomas Jerry Benedict,
Appellant.

**Filed April 8, 2024**
**Affirmed in part, reversed in part, and remanded**
**Larson, Judge**

Scott County District Court
File No. 70-FA-19-7699

Mallory K. Stoll, Blahnik, Prchal & Stoll, PLLC, Prior Lake, Minnesota (for respondent)

Matthew J. Gilbert, Patrick A. McDonald, Gilbert Alden Barbosa, PLLC, Burnsville, Minnesota (for appellant)

Considered and decided by Slieter, Presiding Judge; Larson, Judge; and Ede, Judge.

**NONPRECEDENTIAL OPINION**

**LARSON**, Judge

Following a bench trial, appellant Thomas Jerry Benedict appeals a district court order dividing the marital assets he once held with respondent Rachel Marie Benedict.[1]

---

[1] Because the parties share a surname, this opinion will refer to the parties by their first names.

Thomas argues the district court erred when it: (1) failed to apply Minn. Stat. § 518.58, subd. 1a (2022), to evaluate dissipation of assets; (2) found Thomas failed to contribute to "the acquisition, preservation or appreciation of marital property" under Minn. Stat. § 518.58, subd. 1 (2022); and (3) made inadequate unfair-hardship findings to award Rachel a share of his nonmarital property under Minn. Stat. § 518.58, subd. 2 (2022). Because the district court did not abuse its discretion when it concluded Thomas dissipated marital assets and failed to contribute to the preservation of marital property, we affirm in part. But because the district court failed to make adequate findings regarding unfair hardship, we reverse in part and remand.

## FACTS

Thomas and Rachel married in 1998 and have two sons. Rachel petitioned for divorce in May 2019 after a breakdown in the marriage.[2] *See* Minn. Stat. § 518.06 (2022). In May 2022, the district court held a two-day bench trial to divide the marital estate. We derive the facts presented below from the evidence submitted at trial.

In 2000, Thomas and Rachel purchased a house in Prior Lake and financed the purchase with a mortgage on the property. Thomas and Rachel refinanced their mortgage in 2001, 2003, and 2008. Rachel testified that "over the years [Thomas] would spend thousands and thousands and thousands [of dollars] behind [her] back," and that his "spending habits" necessitated the refinancing. Specific to the 2003 refinancing, Rachel

---

[2] Two months earlier, law enforcement executed a search warrant on the parties' house. Thomas was eventually convicted of four counts of theft by swindle pursuant to Minn. Stat. § 609.52, subd. 2(a)(4) (2016), for stealing money from his employer.

testified that she was surprised to receive refinancing papers on the mortgage "for the tune of 260,000," which increased the preexisting mortgage by $75,000. According to Rachel, Thomas told her he needed the money to pay his mother's tax debt. After Rachel contacted Thomas's mother, he told Rachel he needed the money to pay off a drug debt for his sister.

In 2012, Thomas received a $286,070 inheritance from his father. Thomas used $244,822.62 to pay off the remaining balance on the mortgage. Thomas commingled the remaining funds from his inheritance with marital assets. After paying off the mortgage, Thomas and Rachel obtained a home equity line of credit (HELOC).

In 2015, their son's baseball team planned a trip to Cooperstown, New York. Thomas told the other parents that he solicited a corporate sponsor to pay for the trip. After the trip, Rachel testified that she noticed around $11,000 had been withdrawn from marital funds. When Rachel confronted Thomas, he said the corporate sponsor backed out, and he paid for the trip himself. The record contains cashier's checks worth $8,330, $1,000, and $2,000, all made payable to "Cooperstown Dreams Park."

For dissolution purposes, the parties agreed to use July 2019 as the valuation date for the house. At that time, the balance on the HELOC was $94,786, and the house had an approximate fair market value of $350,000.

In August 2022, by an order for judgment and decree, the district court divided the marital estate. In October 2022, the district court issued an amended order providing additional reasoning for its property division. As relevant to this appeal, the amended order divided the marital estate as follows. First, the district court determined that Thomas had

a nonmarital interest in the homestead worth $244,822.62—the amount of Thomas's inheritance that he used to pay off the mortgage.

Second, crediting Rachel's testimony, the district court found that the 2003 refinancing and the Cooperstown trip were debts solely attributable to Thomas. The district court found that Thomas "did not preserve marital assets and his 'financial contribution to the marriage was negative.'" When considering the "contribution of each in the acquisition, preservation, depreciation or appreciation in the amount or value of the marital property," *see* Minn. Stat. § 518.58, subd. 1, the district court determined that the only financial contribution Thomas made to the marriage "was his one-time payoff of the mortgage" with his inheritance, an amount "that the parties had at least partially incurred due to his dissipation, overspending and fraud."

Last, the district court deducted the 2003 refinancing and Cooperstown trip from Thomas's nonmarital interest in the homestead. To do so, the district court reasoned that Thomas's "mortgage payoff is his only tangible asset," and therefore, "it is fair and equitable that [Thomas's] nonmarital interest in the property is reduced" in order "to prevent unfair hardship to [Rachel]." *See* Minn. Stat. § 518.58, subd. 2.

Thomas appeals.

## DECISION

Thomas argues the district court erred when it: (1) failed to apply Minn. Stat. § 518.58, subd. 1a, to evaluate dissipation of assets; (2) found Thomas failed to contribute to "the acquisition, preservation or appreciation of marital property" under Minn. Stat. § 518.58, subd. 1; and (3) made inadequate unfair-hardship findings to award Rachel

4

nonmarital property under Minn. Stat. § 518.58, subd. 2. Because these issues involve the district court's division of marital assets, we review the district court's decision for an abuse of discretion. *Antone v. Antone*, 645 N.W.2d 96, 100 (Minn. 2002).

District courts have "broad discretion with respect to the division of property." *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn. 1984). A district court abuses its discretion when it makes factual findings that lack support in the record, misapplies the law, or issues "a decision that is against logic and the facts on record." *Woolsey v Woolsey*, 975 N.W.2d 502, 506 (Minn. 2022) (quotation omitted). We will sustain a district court's division of marital assets "if it ha[s] an acceptable basis in fact and principle even though we might have taken a different approach." *Antone*, 645 N.W.2d at 100. When applying the abuse-of-discretion standard of review, we review legal questions de novo and factual findings for clear error. *See id.* at 100-01; *Maurer v. Maurer*, 623 N.W.2d 604, 606 (Minn. 2001); Minn. R. Civ. P. 52.01. With these standards in mind, we review Thomas's arguments.

**I.**

Thomas first challenges the district court's decision to evaluate whether he "dissipated" marital assets. Thomas argues that, under Minn. Stat. § 518.58, a district court can only consider dissipation in the context of a pending or contemplated divorce proceeding. For this argument, Thomas relies on Minn. Stat. § 518.58, subd. 1a. Because Thomas argues the district court erred when it refused to apply subdivision 1a, he presents a legal question that we review de novo. *See Antone*, 645 N.W.2d at 100.

Before 1991, caselaw defined the term "dissipation" as "frivolous, unjustified spending of marital assets." *Volesky v. Volesky*, 412 N.W.2d 750, 752 (Minn. App. 1987).

5

In 1991, the legislature enacted subdivision 1a, to address the "[t]ransfer, encumbrance, concealment, or disposition of marital assets" occurring during or in contemplation of marital dissolution. 1991 Minn. Laws ch. 266, § 5, at 1197. Currently, subdivision 1a provides:

> During the pendency of a marriage dissolution, . . . or in contemplation of commencing a marriage dissolution, . . . each party owes a fiduciary duty to the other for any profit or loss derived by the party, without the consent of the other, from a transaction or from any use by the party of the marital assets. If the court finds that a party to a marriage, without consent of the other party, has in contemplation of commencing, or during the pendency of, the current dissolution, . . . transferred, encumbered, concealed, or disposed of marital assets except in the usual course of business or for the necessities of life, the court shall compensate the other party.

Since 1991, we have used the word "dissipation" to describe conduct covered by subdivision 1a. *See, e.g.*, *Kriesel v. Gustafson*, 513 N.W.2d 9, 13-14 (Minn. App. 1994); *Carrick v. Carrick*, 560 N.W.2d 407, 413 (Minn. App. 1997); *Kremer v. Kremer*, 889 N.W.2d 41, 52-53 (Minn. App. 2017), *aff'd* 912 N.W.2d 617 (Minn. 2018). Notably, however, the word "dissipation" does not appear in subdivision 1a. In addition, no appellate court has concluded that a district court, when dividing marital property based on conduct that occurred during the marriage, cannot evaluate "dissipation" as we defined the term before the legislature passed subdivision 1a. *See Volesky*, 412 N.W.2d at 752.

The lack of caselaw supporting Thomas's argument makes sense given the broad power the legislature conferred upon district courts to consider both negative and positive contributions to the marital estate when dividing marital property. Specifically, subdivision 1 provides:

> Upon a dissolution of a marriage, . . . the court shall make a just and equitable division of the marital property . . . . The court shall consider [among other factors] the contribution of each [spouse] in the acquisition, preservation, depreciation or appreciation in the amount or value of the marital property, as well as the contribution of a spouse as a homemaker. It shall be conclusively presumed that each spouse made a substantial contribution to the acquisition of income and property while they were living together as husband and wife.

We have previously determined that when dividing marital property, a "[district] court has discretion to award debts to one party only." *Meyer v. Meyer*, 375 N.W.2d 820, 828 (Minn. App. 1985), *rev. denied* (Minn. Dec. 30, 1985). Moreover, in nonprecedential opinions, we have affirmed district court decisions evaluating dissipation of marital assets under subdivision 1. *See, e.g.*, *Szarke v. Szarke*, No. A12-1339, 2013 WL 4404248, at *1 (Minn. App. Aug. 19, 2013) (concluding the district court appropriately evaluated the dissipation of marital assets under subdivision 1); *Nelson v. Nelson*, No. A05-1507, 2006 WL 539394, at *4 (Minn. App. Mar. 7, 2006) (same).

We find our prior nonprecedential opinions persuasive. *See* Minn. Stat. § 480A.08, subd. 3(b) (2022) (noting that nonprecedential opinions of this court "must not be cited as precedent"); *Kruse v. Comm'r of Pub. Safety*, 906 N.W.2d 554, 559 (Minn. App. 2018) (stating that our nonprecedential opinions "may be persuasive"). Post-1991 caselaw using the word "dissipation" does not preclude a district court from evaluating the factors listed in subdivision 1, including "the contribution of each [spouse] in the acquisition, preservation, depreciation or appreciation in the amount or value of the marital property." To determine otherwise would severely hamper a district court's ability to achieve the "just and equitable" division of property that subdivision 1 requires. For this reason, we

7

conclude the district court did not legally err when it evaluated Thomas's dissipation of marital assets under subdivision 1.

## II.

Thomas also argues the district court abused its discretion when it applied subdivision 1. Specifically, Thomas argues the district court erred when it determined that he did not contribute "to the acquisition, preservation, or appreciation of marital property" and attributed the 2003-refinancing and Cooperstown-trip debts solely to him. *See* Minn. Stat. § 518.58, subd. 1. Thomas raises a question of fact, which we review under the clearly erroneous standard of review. *See Antone*, 645 N.W.2d at 100. In doing so, we view the evidence in the light most favorable to the district court's findings and reverse only if we are left with a "definite and firm conviction that a mistake was made." *Vangsness v. Vangsness*, 607 N.W.2d 468, 474 (Minn. App. 2000).

Here, the district court determined that the 2003 refinancing and the Cooperstown trip depreciated the marital estate, and that depreciation was solely attributable to Thomas. To support its determination, the district court relied heavily on Rachel's testimony[3] regarding Thomas's reckless spending and mismanagement of marital assets. Rachel testified that "over the years" Thomas "would spend thousands and thousands and thousands [of dollars] behind [her] back," and the multiple refinancings supported

---

[3] Thomas argues the district court erred when it determined that Rachel was a credible witness, pointing to several instances where she could not recall past events. But we give "due regard . . . to the opportunity of the trial court to judge the credibility of the witnesses." Minn. R. Civ. P. 52.01; *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988). Here, Rachel's failure to remember certain details did not preclude her from being a credible witness, and we defer to the district court's findings.

Thomas's spending.[4] More specifically, she testified that Thomas made material misrepresentations[5] to her regarding the 2003 refinancing, first indicating the money was needed to pay his mother's tax debt and then to pay off his sister's drug debt. Although Thomas did use nonmarital funds to pay off the balance of the mortgage in 2012, allowing him to attain a nonmarital interest in the home, the mortgage would not have been as high if not for Thomas's spending and his repeated refinancing of the property. And for the Cooperstown trip, Rachel testified that Thomas told the team that a corporate sponsor would pay for the trip, but instead, Thomas decided to pay for the trip with marital funds. Rachel testified that she did not learn until later that Thomas paid for the trip and nothing in the record suggests that Thomas reimbursed the marital estate.[6] Relying on this

---

[4] Thomas argues the district court improperly considered marital misconduct when it divided marital assets. *See* Minn. Stat. 518.58, subd. 1 (providing that, a "[district] court shall make a just and equitable division of the marital property . . . without regard to marital misconduct"). However, we have previously determined that a district court can consider poor behavior as an explanation for a spouse not contributing to the value of the marital estate. *See Stassen v. Stassen*, 351 N.W.2d 20, 23-24 (Minn. App. 1984). Here, the district court evaluated Thomas's conduct for the purpose of discerning his negative contributions to the marital estate pursuant to subdivision 1 and did not abuse its discretion.

[5] Thomas disputes the district court's conclusion that he "fraudulently induced" Rachel to agree to the 2003 refinancing. Thomas argues that the district court erroneously determined that he committed fraud *sua sponte* because Rachel never pleaded fraud with particularity, *see* Minn. R. Civ. P. 9.02, and even if she had, she would not have met the six-year statute of limitations for a fraud claim, *see* Minn. Stat. § 541.05, subd. 1(6) (2022). But as set forth above, under subdivision 1, the district court has the authority to evaluate the extent to which each spouse depreciated marital assets. It follows that the district court has the authority to identify and evaluate spousal conduct that led to depreciation, including, in some contexts, misleading statements about financial decisions. We conclude the district court did not abuse its discretion.

[6] Thomas argues that it was unnecessary for him to reimburse the marital estate because, after he paid off the mortgage, over $41,000 from his inheritance remained in a marital bank account. However, the district court determined that the remaining $41,000 had become commingled into the marital estate and that Thomas did not adequately trace those

9

testimony, the district court determined that Thomas did not contribute to the preservation of marital property, reasoning that his "fraudulent actions have resulted in the dissipation and depreciation of marital . . . assets."

Upon reviewing the record and the district court's detailed findings in this case, we are not left with a definite and firm conviction that a mistake has been made. Thus, the district court's findings were not clearly erroneous.

## III.

Last, Thomas argues that even if the district court properly attributed the debts from the 2003 refinancing and the Cooperstown trip solely to Thomas, the district court improperly determined that it could invade his nonmarital interest in the home to award Rachel the amount of those debts to prevent unfair hardship. *See* Minn. Stat. § 518.58, subd. 2.

Subdivision 2 provides:

> If the court finds that either spouse's resources or property, including the spouse's portion of the marital property . . . are so inadequate as to work an unfair hardship, considering all relevant circumstances, the court may, in addition to the marital property, apportion up to one-half of the property otherwise excluded [as nonmarital] to prevent the unfair hardship. If the court apportions property other than marital property, it shall make findings in support of the apportionment. The findings shall be based on all relevant factors including the length of the marriage, any prior marriage

---

funds to establish their nonmarital character. *See Kerr v. Kerr*, 770 N.W.2d 567, 571 (Minn. App. 2009). Because Thomas does not contest the district court's underlying determinations that his remaining inheritance became commingled with the marital estate, and that he failed to trace his nonmarital funds after they became commingled, we need not determine whether those funds, in the form of nonmarital assets, functionally covered the Cooperstown trip.

10

of a party, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, needs, and opportunity for future acquisition of capital assets and income of each party.

A district court must make specific findings to support apportioning nonmarital property "based on all relevant factors and those included in [subdivision 2]." *Ward v. Ward*, 453 N.W.2d 729, 733 (Minn. App. 1990), *rev. denied* (Minn. June 6, 1990).

District courts may only distribute nonmarital property in unusual cases. *Dammann v. Dammann*, 351 N.W.2d 651, 653 (Minn. App. 1984). To do so, they must make a finding of unfair hardship. *Wolter v. Wolter*, 395 N.W.2d 417, 420 (Minn. App. 1986). Unfair hardship requires a "very severe disparity between the parties," and the party who receives the nonmarital assets must be in a more precarious financial situation than the party who has their nonmarital assets invaded. *See Ward*, 453 N.W.2d at 733.

Here, the district court designated as nonmarital the $244,822.62 interest in the home Thomas generated when he used his inheritance to pay off the mortgage. To account for debts including the Cooperstown trip and the 2003 refinancing, the district court stated that "it is fair and equitable that [Thomas's] nonmarital interest in the property is reduced." The district court's only finding with respect to unfair hardship was: "To the extent it applies, the Court finds this is necessary to prevent unfair hardship to [Rachel]."

We conclude the district court did not make sufficient unfair-hardship findings to reduce Thomas's nonmarital interest in the home. The district court did not, for instance, compare Rachel's and Thomas's employment income, nor their capacity for future earnings, among the other relevant factors under subdivision 2. Because the district court

11

did not base its unfair-hardship findings on "all relevant factors," it abused its discretion. *See* Minn. Stat. § 518.58, subd. 2. However, we cannot say, given the record in this case, that the district court could not find that Rachel would suffer unfair hardship absent some access to Thomas's nonmarital assets. *See Ward*, 453 N.W.2d at 733. Therefore, without expressing an opinion on whether to apportion nonmarital property, we reverse and remand to the district court for further proceedings consistent with this opinion. Whether to reopen the record on remand shall be discretionary with the district court.

**Affirmed in part, reversed in part, and remanded.**